IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

RONNIE GENE WADE,

       Plaintiff,

v.                              CASE NO. 2:05-cv-00289

JO ANNE BARNHART,
Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Ronnie Gene Wade (hereinafter referred to as "Claimant"), filed an application for SSI on June 24, 2002, alleging disability as of June 1, 1996, due to a bad back, hearing loss and high blood pressure.  (Tr. at 105-06, 113.)  The claim was denied initially and upon reconsideration.  (Tr. at 80-84, 85-86.)  On January 30, 2003, Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. at 87.)  Hearings were held
on October 9, 2003, and August 13, 2004, before the Honorable James
D. Kemper.  (Tr. at 267-307, 308-59.)  By decision dated October
26, 2004, the ALJ determined that Claimant was not entitled to
benefits.  (Tr. at 15-25.)  The ALJ's decision became the final
decision of the Commissioner on February 9, 2005, when the Appeals
Council denied Claimant's request for review.  (Tr. at 5-8.)  On
April 7, 2005, Claimant brought the present action seeking judicial
review of the administrative decision pursuant to 42 U.S.C. §
405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a
claimant for disability benefits has the burden of proving a
disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir.
1972).  A disability is defined as the inability "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which . . . can be
expected to last for a continuous period of not less than 12 months
. . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential
evaluation" for the adjudication of disability claims.  20 C.F.R.
§ 416.920 (2004).  If an individual is found "not disabled" at any
step, further inquiry is unnecessary.  Id. § 416.920(a).  The first
inquiry under the sequence is whether a claimant is currently
engaged in substantial gainful employment.  Id. § 416.920(b).  If

2

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in

3

substantial gainful activity since the alleged onset date.  (Tr. at 16.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease, hearing loss, hypertension and associated dizziness, borderline intellectual functioning, a learning disorder and a depressive disorder.  (Tr. at 17.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 18-19.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 21.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 22.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as grader/sorter, marker/labeler and assembler of small parts, which exist in significant numbers in the national economy.  (Tr. at 23.)  On this basis, benefits were denied.  (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the

4

> case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-seven years old at the time of the administrative hearing.  (Tr. at 270.)  Claimant completed the eighth grade.  (Tr. at 270.)  In the past, he worked as a laborer. (Tr. at 272.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On July 5, 1995, Claimant underwent a lumbar microdiskectomy at L5-S1 on the left based on a diagnosis of lumbar radiculopathy due to a herniated nucleus pulposus L5-S1 on the left following a motor vehicle accident.  (Tr. at 154.)

On January 29, 1998, Claimant underwent a posterior lumbar interbody fusion, L5-S1 with ray threaded cages and morcellized iliac crest bone graft harvested through separate fascial incision. (Tr. at 195-96.)  Prior to the surgery, the treatment notes of David Weinsweig, M.D., who performed both surgeries, reveal that he cautioned Claimant "that I doubt he would ever be perfect, but hopefully this will help him to a significant degree." (Tr. at 197.)  He also noted that the L3-4 and L4-5 are degenerated, but that he was not inclined to do anything about them at this point. (Tr. at 197.)

In an undated letter faxed on June 7, 1999, Dr. Weinsweig wrote that Claimant was under his care for chronic lumbar radiculopathy.  (Tr. at 206.)

The record includes an undated report from Lincoln Physical Therapy, which states that Claimant was seen for evaluation on March 8, 1999.  (Tr. at 207.)

By letter dated February 16, 1999, Dr. Weinsweig wrote that Claimant reported his back and leg pain was worse.  Claimant had no obvious focal neurologic deficits.  Claimant quit smoking after his surgery in January of 1998, and gained fifty pounds, which did not help his back condition.  Dr. Weinsweig recommended x-rays and physical therapy.  (Tr. at 208.)

On July 30, 2002, Rodolfo Gobunsuy, M.D. examined Claimant at the request of the State disability determination service.

Claimant reported that surgery did not help his back impairment. Claimant reported that he had repeat back surgery, which also did not help.  Claimant reported constant pain radiating into his leg and leg weakness.  (Tr. at 165.)  Dr. Gobunsuy had no records available to review. (Tr. at 166.)  Dr. Gobunsuy concluded that Claimant is "status post lumbar fusion with failed low back syndrome.  He has occasional weakness of the left leg, however, on this examination, he was able to stand steadily on his left leg alone.  There is no atrophy of the left leg muscle, but he has no reflex on the left ankle.  His back is tender.  The range of motion is affected.  Straight leg raising is slightly positive on the left side." (Tr. at 167.)

On August 13, 2002, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was capable of light level work with occasional postural limitations and a need to avoid concentrated exposure to extreme cold, heat, noise and hazards.  (Tr. at 171-178.)

On December 16, 2002, a State agency medical source completed a Physical Residual Functional Capacity Assessment and reached essentially the same conclusions as the source above.  (Tr. at 179-86.)

By letter dated June 27, 1997, Joseph B. Touma, M.D. stated that an audiogram revealed a moderate sensorineural hearing loss in both ears, more on the right side, with satisfactory discrimination

scores.  He recommended hearing aids.  (Tr. at 191.)

On August 27, 2003, Dr. Weinsweig examined Claimant and noted his complaints of severe back pain radiating down both legs. Claimant had no focal neurologic deficits.  An MRI from November 2002, looked improved from his preoperative study because the disc space at L5-S2 had opened up more than previously.  Claimant had degenerative changes and epidural scar tissue.  Dr. Weinsweig indicated that he did not believe further surgery would be of any benefit.  Dr. Weinsweig ordered a follow up MRI and prescribed physical therapy and a possible visit to a pain clinic.  (Tr. at 202.)

An MRI of Claimant's lumbar spine on September 19, 2003, showed mild diffuse bulging at the L1-L2 level, unchanged from a previous MRI on November 26, 2002 (Tr. at 204-05), no evidence of a disc bulge at L2-L3, mild diffuse disc bulge at L3-L4 causing mild to moderate bilateral neural foraminal narrowing and mild diffuse disc bulging at L5-S1.  (Tr. at 201.)

On October 15, 2003, Cathy Adkins, M.D. completed an evaluation on which she noted that she first examined Claimant on September 30, 2002.  She opined that Claimant could lift less than 10 pounds.  She stated that Claimant has been unable to engage in substantial gainful activity for a full eight-hour work day during the period of time Dr. Adkins had treated him.  Dr. Adkins stated that Claimant's condition caused him to experience credible pain,

as well as weakness and motor loss with muscle weakness, sensory or reflex loss in his legs and lower extremities, at times.   Dr. Adkins opined that Claimant's condition met or equaled Listing 1.04A.  (Tr. at 209.)

The record includes treatment notes from Sean C. DiCristofaro, M.D. dated October 4, 2002, through October 24, 2003.  (Tr. at 211-23.)

On November 3, 2003, Mareda L. Reynolds, M.A. examined Claimant at the request of his counsel.  Testing on the Digit Span subtest of the WAIS-III indicated that Claimant's attention and concentration were within normal limits for short periods of time. (Tr. at 228.)  Ms. Reynolds diagnosed major depressive disorder, moderate, learning disorder, not otherwise specified on Axis I and made no Axis II diagnosis.  On the WAIS-III, Claimant attained a verbal IQ score of 75, a performance IQ score of 75 and a full scale IQ score of 73.  (Tr. at 229.)  Ms. Reynolds completed a Mental Impairment Questionnaire Residual Functional Capacity Assessment on which she opined that Claimant's abilities were moderately limited in most areas, but that Claimant was markedly limited in the ability to maintain attention and concentration for extended periods and complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. at 231-34.)

9

The record includes treatment notes from Gregory A. Elkins, M.D. and others at Lincoln Primary Care Center, Inc., dated July 1, 2003, through June 9, 2004.  On July 1, 2003, Claimant complained of his back hurting and was diagnosed with chronic low back pain. Straight leg raising was negative bilaterally.  Claimant was unable to stand on his heels and toes.  Patellar reflexes were intact and symmetrical.  The left ankle reflex could not be elicited.  It is unclear who authored this treatment note.  (Tr. at 256.)  On February 20, 2004, Andrew Foy, M.D. examined Claimant and noted Claimant continued to have back problems.  There were no focal, motor or sensory deficits.  Claimant was instructed to continue over-the-counter treatments for his back pain.  Claimant had a euthymic mood and appropriate affect.  (Tr. at 252.)  On March 19, 2004, Claimant reported that he fell backwards and injured his back.  He was diagnosed with acute and chronic low back pain and prescribed Darvocet.  (Tr. at 250.)  On May 12, 2004, Dr. Elkins examined Claimant, and he reported chronic back pain.  Claimant had tenderness along the lower back.  Straight leg raising was negative bilaterally.  Reflexes were 2+/4 and symmetrical.  Dr. Elkins prescribed Lortab.  (Tr. at 248.)

In a letter dated July 28, 2004, from Claimant's counsel to Dr. Elkins asking Dr. Elkins to provide information, Dr. Elkins wrote that Claimant apparently had a myocardial infarction last week.  (Tr. at 258.)

On August 16, 2004, Dr. Elkins completed a Questionnaire on which he stated that he first examined Claimant related to his back condition on June 7, 1995. He opined that Claimant would be unable to perform a job which would allow him to alternate sitting and standing for a full eight-hour work day if he was unable to lie down at regular intervals. He opined that Claimant could lift ten to twenty pounds. He further opined that Claimant has credible complaints of pain and weakness along with motor loss with muscle weakness and sensory or reflex loss in his legs or lower extremities. Dr. Elkins also opined that Claimant met or equaled Listing 1.04A and B. (Tr. at 260-61.)

At the second administrative hearing, the ALJ called Stuart Gitlow, M.D. to testify about Claimant's alleged mental impairments. (Tr. at 317-42.) Dr. Gitlow testified that the record revealed mild to moderate and untreated depression caused by Claimant's pain and a pain disorder, but that he was not qualified to testify about the pain disorder. (Tr. at 321.) Nevertheless, Dr. Gitlow testified that there is nothing in the evidence of record to indicate Claimant "is malingering or otherwise is telling an untruth regarding his experience." (Tr. at 325.) Dr. Gitlow further testified that Claimant's depression does not meet or equal a listing. (Tr. at 321.) Dr. Gitlow testified that Claimant had fair to good abilities in most areas of functioning, including a fair ability to maintain attention and concentration. (Tr. at 323-

24.) Dr. Gitlow stated that in testifying about these limitations in the various areas of functioning he took "into account the complaint of psychiatric symptoms which would have to be as a matter of course in part at least the result of the patient's ongoing pain. If his chronic pain was contributing more severely to his psychiatric status, he would complain of additional psychiatric complaints but he hasn't had that." (Tr. at 327.) However, Dr. Gitlow confirmed that his testimony was based on the "depressive symptoms alone and not ... [Claimant's] subjective complaints." (Tr. at 327.) Dr. Gitlow further stated that regarding Claimant's ability to concentrate, it would be difficult to testify about Claimant's abilities over the course of an eight-hour workday. (Tr. at 335.)

In his decision, the ALJ determined that Claimant's residual functional capacity was "restricted to light work, lifting and/or carrying no more than twenty pounds occasionally and ten pounds frequently, at all relevant times ... [h]e should also be limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and should avoid concentrated exposure to extreme cold and heat, noise, and hazards." (Tr. at 21.) In his hypothetical question to the vocational expert, the ALJ included the above limitations and the additional limitations of reading at a third grade level, spelling at a second grade level and doing arithmetic at a third-grade level and a fair ability to deal with

work stresses, maintain attention and concentration, understand remember and carry out complex and detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability. (Tr. at 344.) In response, the vocational expert identified a significant number of jobs. (Tr. at 344.)

Claimant's counsel asked the vocational expert if she could identify jobs where, in addition to the above limitations, Claimant's ability to concentrate on a sustained basis could not be determined. The vocational expert testified that she could identify no jobs given this limitation. She further testified that even a marked limitation in concentration, on its own, would not preclude all unskilled jobs, but that in addition to the limitations already identified by the ALJ, such a marked limitation in concentration would eliminate all jobs. (Tr. at 356.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ improperly rejected the opinions of Claimant's treating physicians, Dr. Elkins and Dr. Adkins; (2) the ALJ erred in failing to find that Claimant meets or equals Listing 1.04A and failed to explain his findings in this regard or whether Claimant's combined impairments met or equaled a listing; (3) the ALJ erred in rejecting Claimant's credibility; and (4) the ALJ improperly relied on the testimony of

the medical expert.  (Pl.'s Br. at 4-13.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant could perform the limited range of light work identified by the vocational expert; (2) the ALJ was not required to accept the opinions of Claimant's treating sources; and (3) substantial evidence supports a finding that Claimant is not disabled as a result of his mental complaints.  (Def.'s Br. at 11-16.)

Claimant first argues that the ALJ's decision is not supported by substantial evidence because the evidence of record from Dr. Elkins and Dr. Adkins establishes that Claimant meets or equals Listing 1.04A.  Claimant asserts that other substantial evidence of record supports the opinions of these treating physicians, including the report of Dr. Gobunsuy.  Claimant further asserts that the ALJ erred in rejecting the functional limitations opined by Dr. Elkins and Dr. Adkins and instead, inserted his own nonmedical opinion.  Claimant contends that if the ALJ had doubts about these treating source statements, he should have called a medical expert to testify at the administrative hearing.  (Pl.'s Br. at 6-7.)  In a related vein, Claimant argues that the ALJ erred in failing to determine that Claimant's combined impairments meet or equal a listing or in fully explaining his findings in this regard.  (Pl.'s Br. at 8.)

In his decision, the ALJ explained that he considered the

opinions of Dr. Elkins and Dr. Adkins, but that he rejected them as

> inconsistent with and unsupported by the objective
> evidence of record (Exhibits B13F, B 19F).  For reasons
> set forth previously, the claimant's back impairment does
> not satisfy the criteria for any musculoskeletal listing
> found under section 1.00 of Subpart P of Regulations No.
> 4, despite the opinions of Dr. Elkins and Dr[.] Adkins.
> The medical evidence shows that the claimant is
> neurologically intact and the record does not further
> establish evidence of nerve root compression, spinal
> arachnoiditis, or lumbar spinal stenosis, as required by
> Listing 1.04.  Dr. Elkins assessed that the claimant is
> capable of lifting and/or carrying 10-20 pounds which is
> consistent with my determination, as set forth above.
> While Dr. Elkins assessed that the claimant is limited to
> lifting and/or carrying less than ten pounds, this
> conclusion is not supported by the record, for reasons
> set forth above.  Moreover, the ultimate conclusion is
> not supported by the record, for reasons set forth above.
> Moreover, the ultimate conclusion of disabilty is
> reserved for the Commissioner, pursuant to Social
> Security Ruling 96-5p.

(Tr. at 21.)

The court proposes that the presiding District Judge find that the weight afforded the opinions of Claimant's treating physicians and the ultimate opinion that Claimant does not meet or equal Listing 1.04A are supported by substantial evidence.  Dr. Adkins' assessment was not supported by any underlying treatment notes whatsoever, and she provided no objective evidence supporting her opinions on the assessment itself.  (Tr. at 209-10.)  Dr. Elkins' brief treatment notes also do not provide objective clinical or laboratory evidence supporting his opinions on the assessment. (Tr. at 260-61.) On May 12, 2004, Dr. Elkins found lower back tenderness, but straight leg raising was negative and reflexes were

15

2+/4 and symmetrical.  (Tr. at 248.)

A treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 416.927(d)(2) (2004).  In addition to the lack of underlying evidence supporting their opinions, the opinions of these physicians are inconsistent with the remaining evidence of record. Dr. Gobunsuy noted weakness in Claimant's left leg, but also stated that Claimant was able to stand steadily on his left leg alone and that Claimant had no atrophy in the left leg. (Tr. at 167.)  While Dr. Gobunsuy found slightly positive straight leg raising in July of 2002, Dr. Elkins noted negative straight leg raising in May of 2004.  The State agency medical sources both opined that Claimant could perform light work, reduced by a few nonexertional limitations.  (Tr. at 171-78, 179-86.)  Dr. Weinsweig, who performed Claimant's surgeries, noted in August of 2003, that Claimant had no focal neurologic deficits and that an MRI from November of 2002, looked improved from Claimant's preoperative MRI study.  (Tr. at 202.)

In short, substantial evidence supports the ALJ's determination that Claimant's residual functional capacity was "restricted to light work, lifting and/or carrying no more than

16

twenty pounds occasionally and ten pounds frequently, at all relevant times ... [h]e should also be limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and should avoid concentrated exposure to extreme cold and heat, noise, and hazards." (Tr. at 21.)  In his hypothetical question to the vocational expert, the ALJ included the additional limitations of reading at a third grade level, spelling at a second grade level and doing arithmetic at a third-grade level and, based on Claimant's mental impairments, a fair ability to deal with work stresses, maintain attention and concentration, understand, remember and carry out complex and detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability.  (Tr. at 344.) These limitations are supported by substantial evidence of record, and the court proposes that the presiding District Judge so find.

The court further proposes that the presiding District Judge find that the ALJ adequately considered Claimant's impairments alone and in combination and properly concluded that Claimant did not meet or equal a listing.  Nor can the court find any indication that the ALJ improperly substituted his own opinion or that the ALJ should have called a medical expert.

"Administrative law judges may ... ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the

requirements of any listed impairment in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 416.927(f)(2)(iii) (2004). The record before the ALJ contained adequate evidence with respect to Claimant's physical impairments, and the ALJ did not abuse his discretion in failing to call a medical expert to testify about Claimant's physical impairments. Furthermore, the ALJ's consideration of Claimant's impairments in combination is reflected in his residual functional capacity finding and hypothetical question to the vocational expert. See 20 C.F.R. § 416.923 (2004) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Claimant argues that the ALJ erred in his pain and credibility analysis. Claimant asserts that the objective evidence of record supports a finding of disabling pain. Claimant also asserts that the ALJ improperly dismissed Claimant's psychological impairments as identified by Ms. Reynolds and improperly relied on the testimony of Dr. Gitlow. (Pl.'s Br. at 11-12.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR")

and are supported by substantial evidence.  20 C.F.R. § 416.929(b) (2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).  The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 20.)

The ALJ explained in his decision that he found Claimant's credibility to be only fair at best.  The ALJ stated that while Claimant has functional limitations as a result of his impairments, they are not disabling, as Claimant testified.  The ALJ relied on the fact that postoperatively, Claimant has received limited treatment and has been noncompliant with recommended treatment such as physical therapy and treatment with a specialist.  (Tr. at 20.) The ALJ's findings are supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Regarding Claimant's mental impairments and the testimony of Dr. Gitlow, the court proposes that the presiding District Judge find that the ALJ's findings related to Claimant's mental impairments are supported by substantial evidence and that the ALJ adequately weighed the opinions of Ms. Reynolds and Dr. Gitlow.

In his decision the ALJ noted that despite the fact that Claimant has no history of psychiatric treatment and has been prescribed no psychotropic medication, Claimant has been diagnosed

19

by Ms. Reynolds with a depressive disorder.  The ALJ found this and Claimant's borderline intellectual functioning and a learning disorder to be severe impairments.  (Tr. at 17.)  The ALJ further explained in his decision that he adopted the limitations opined by Dr. Gitlow over those of Ms. Reynolds because Dr. Gitlow's opinions are "reasonable based upon the objective evidence of record." (Tr. at 22.)  The ALJ noted that even Ms. Reynolds' mental status report "revealed easily established rapport; appropriate social functioning; normal speech with only mild articulation errors; full orientation; broad and appropriate affect; neutral mood; adequate judgment/insight; intact/adequate memory; normal attention/concentration; and adequate persistence and pace." (Tr. at 22.)  Although Dr. Gitlow was a nonexamining source, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (more weight given to an opinion by a specialist about issues in his/her area of specialty).  Dr. Gitlow's opinion certainly is consistent with substantial evidence of record, particularly the lack of treatment for mental impairments and the fairly neutral underlying findings by Ms. Reynolds.

Claimant complains that Dr. Gitlow is the brother of the ALJ. At the hearing, Dr. Gitlow confirmed that he was the brother of an ALJ "in this office" (Tr. at 339), though it is unclear as to whether the ALJ in the instant case is his brother.  In any event,

Claimant does not identify any bias on the part of Dr. Gitlow because of any familial relationship with the ALJ or any other ALJ, nor could the court find any in his testimony.

Claimant also complains that Dr. Gitlow did not taken into account his subjective complaints of pain. In fact, Dr. Gitlow stated that he could only testify about mental impairments and that he did "take into account the complaint of psychiatric symptoms which would have to be as a matter of course in part at least the result of the patient's ongoing chronic pain. If his chronic pain was contributing more severely to his psychiatric status, he would complain of additional psychiatric complaints but he hasn't had that." (Tr. at 327.) Dr. Gitlow's testimony was appropriate given his expertise and purpose in testifying about Claimant's mental impairments and, in any event, the ALJ considered Claimant's subjective complaints of pain in his pain and credibility analysis and made findings in that regard that are supported by substantial evidence.

Finally, Claimant argues that Dr. Gitlow stated that he could not testify one way or another concerning Claimant's ability to concentrate over a six- to eight-hour workday. (Tr. at 335.) Claimant further asserts that "consistent with Dr. Gitlow's testimony" the vocational expert admitted that "if it was added to the ALJ's hypothetical that there would be no way to determine Mr. Wade's ability to concentrate on a sustained basis then she could

not testify with any degree of certainty that jobs would exist. (Tr. at 356)." (Pl.'s Br. at 12.)

Dr. Gitlow testified that Claimant would have a fair ability to maintain attention and concentration. (Tr. at 323.) On cross-examination, Dr. Gitlow stated that this opinion was based in part on Ms. Reynolds' findings, but that he was not able to testify one way or the other about Claimant's level of concentration over a six- to eight-hour workday. Dr. Gitlow testified that it is "more difficult" to testify about this period of time, and, as a result, he was "obviously speculating based upon the available information." (Tr. at 335.) The vocational expert testified that if such an unknown were added to the hypothetical question she would not be able to say that Claimant could or could not perform jobs. However, the vocational expert also explained that she had previously testified that "if a person's markedly limited in their ability to concentrate, it does not completely eliminate all unskilled jobs" standing alone, but combined with the other limitations identified by the ALJ, there would be no jobs. (Tr. at 356.)

Substantial evidence of record does not support a marked limitation in attention and concentration. The ALJ adequately considered Claimant's mental limitations and his subjective complaints of pain and appropriately concluded that Claimant has a fair ability to maintain attention and concentration, and the court

22

proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

January 25, 2006
          Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

24